Sklar v. Commissioner of Internal Revenue. I was going to say Sklar v. Studio Transport, etc. Apropos of the two previous arguments, are there really people named Sklar? Do they have children, and have they received religious education? Not only is the answer to those questions yes, but I'm pleased to report to the Court that the Sklars are alive and well, and they have sufficient interest in the case to have asked me to call them after the argument. Well, you know where they are, even. But in the interest of full disclosure, because I don't want to be hiding anything, they no longer reside in California or even in the United States, although they remain United States taxpayers. None of that is relevant to this case. Where do they live? In the Bahamas? They've moved to Israel. Moved to Israel? Yes, sir. It was about a year ago. How long ago? I'm trying to remember if it was just before or after we filed our briefs here. I don't recall. It would have been about a year ago, whatever. Long after the year at issue in this case, which is 1995, at which time they were residents of the state of California living in North Hollywood. If I may please the Court, my name is Jeffrey Zuckerman, and I represent, of course, the appellants, the taxpayers, Michael and Marla Sklar. With permission of the Court, I'd like to reserve five minutes for rebuttal. As the Court knows, this case involves the Sklar's 1995 tax return. IRS disallowed $15,000 that the Sklar's claimed as a charitable contribution, representing the amount they claimed was what they had paid for the religious component of their children's education at two schools, two The Sklar's from the beginning made two arguments as to why this should be allowed. Number one, they argued that members of the Church of Scientology are permitted by IRS to deduct as charitable contributions their payments for religious education, and therefore, as a matter of the First Amendment to the United States Constitution, practitioners of other religions are entitled to deduct as charitable contributions their payments for religious education. There's probably no more fundamental point to be said about the First Amendment than that the government may not discriminate on the basis of what religion a person practices in terms of whether they may or may not deduct a certain payment as a charitable contribution. Well, today, say you send your kid to a Catholic school, what can you deduct? We would say that you would be entitled to deduct your payments to the extent they exceed the market value of the secular education, which is exactly what we contend here. The Sklar's were entitled to deduct the amount by which their payments to these schools exceeded the market value of the secular education their children received. Is that going on now? Pardon me, Your Honor? Is that going on now? I'm not sure. If you send a kid to a Catholic school, you get a deduction? To the best of our knowledge, IRS will not allow practitioners of any religion to deduct payments for education other than members of the Church of Scientology. Members of the Church of Scientology, we understand, and IRS has not denied it, although they have refused. This is part of our problem. The tax court refused to allow us any discovery concerning this practice by IRS. The tax court, when we subpoenaed the Church of Scientology and its leader for trial testimony. What's that guy's name? Reverend Hency. Hency. That's not Ron Hubbard. He passed away in 495. I met him in my earlier life in the district court. I got the case settled. I put him in the room with the other guy that was fighting him and I locked all the bathroom doors and turned the air conditioning down to 35. I think in California that would be a pleasure to get it down to 35. I want to ask a question. We have Hernandez's Supreme Court decision saying that this kind of a deduction is not allowed. And assume we don't agree with you that the 1993 amendments changed anything. If we were to agree that giving the Scientologists special treatment violated the Constitution, wouldn't that force the IRS to act contrary to the existing Supreme Court law? Well, the Supreme Court has held in other tax cases that if the taxing authority unlawfully reduces the tax of a taxpayer, another taxpayer, even if they're paying what they otherwise would be required to pay under the tax law, nonetheless is entitled to the same reduction where there's a constitutional violation by making them pay more. Right, but wouldn't that, and my kids actually went to Catholic school, wouldn't I then be able, and me and everybody else like me, be able to go back to the IRS and say we want our deduction. Everybody else in the United States has sent their kids to a religious school. Well, first off, there's a limit of, you can only go back and amend the tax return for three years. Okay, well I've got three years' worth. There's a certain limit. Second, it may well be that everybody is entitled to this relief. The government cannot be allowed, the IRS of all agencies of government should not and may not be allowed to punish all practitioners of religion except one favored group. This is a, to me, this is a dangerous situation that exists. How do you know for sure that they're treating the Scientologists differently? Well, there are two ways. First off, we, also in the first one we have a free press, and the Wall Street Journal actually published what they said was the closing agreement. We presented that in evidence in this, and it's in the record here, which is in the excerpts before the court. When I offered that in evidence, the IRS attorney, trial attorney, said, well, how do we know? You know, we don't know whether that's the real decision. No one knows, to which I responded, well, obviously someone knows. The Commission of Internal Revenue knows, and you could say if it's not, and they declined to say whether it was or wasn't. We also know because when the scholars first took this deduction, and what they did after the agreement with the Church of Scientology, the scholars went back and amended the 91 and 92 returns and then took the deduction for 93, 94, and 95. IRS at first was confused. The scholars wrote we're entitled to this just like members of the Church of Scientology. IRS thought they were saying we are members of the Church of Scientology, so IRS told them as members of the Church of Scientology, here are the documents we need to receive from you in order for you to get your deduction. And the scholars said, no, no, you misunderstood. It's not that we're members of the Church of Scientology. But there in that correspondence, IRS acknowledged that they had a special deal with the Church of Scientology. This court, in the previous case, this court assumed that the text published by the Wall Street Journal was, in fact, the true text. And based on that text, there is no doubt that members of the Church of Scientology are permitted to deduct what they call auditing and training, which the Supreme Court in Hernandez described as doctrinal instruction in the Church of Scientology. I'd like to put the Church of Scientology case to the side for a moment. I know it's central to your argument. But I am still troubled by the notion that education can be dissected in such a way as to differentiate between secular and religious instruction, and that all of a sudden now a tuition payment becomes a dual payment. Give me a little more of your argument about how we get to the point where we are really, I mean, I know in SCLAR I there was that invitation. I mean, is that where it comes from? Does it come from American Bar Endowment? Because it's a concept I have a difficult time with, I have to confess. First, just so that we don't lose sight, there are payments, $125, for payments for a separate class, an after-school class, at one of the schools for one of the children, of course, in what's called Mishnah, which is part of the Talmud, it's part of the Jewish oral law, and that there was no secular content whatsoever for those classes. They were a special after-school class of a purely religious nature. But by what authority do we get to the point where parents who have their kids enrolled in an educational experience, which includes various components, physical education, intellectual training, religious training, moral training of a non-religious matter, whatever, it's the right mix that they have, that they want for their children, and all of a sudden somebody comes in and starts with a scalpel carving out pieces and saying, this is religious, therefore, I mean, if your quest in life is to be a pastor, your undergraduate degree is related to religious instruction in some form or another, I mean, is your entire seminary expense deductible because it's all religious training? No, because that's where, in fact, in enacting the 1993 amendments to the tax code, Congress explicitly put into the legislative history that it would not include payments for courses toward a recognized academic degree. In these schools, in addition to this one class that was an extracurricular class, had no connection with their main buyers who was after school, et cetera, in the schools that the Sklar children attended, there were clear divisions of the day. For example, in the yeshiva of Isaacson, in the morning, before lunch, all classes were purely devoted to Jewish studies. There was no math in the morning. There's no English. There's no American history. None of that in the morning. It's purely Jewish studies. For boys in the older grades, it becomes purely, almost entirely the oral law. It becomes the written law, but it's purely Judaic studies. And is that considered an intangible religious benefit? I would submit yes, it is, Your Honor. In the same way, there's no question that, for example, if I pay $100 to my synagogue in order to be able to attend and have a seat for the high holy day services, that is considered, that seat in the synagogue, that's even more tangible in an education because there's a real physical seat there, but still that is an intangible religious benefit. IRS agrees that I'm entitled to deduct the full $100 that I pay in order to have that seat in the synagogue for high holy day services. But the academies that the Sklar's children attended were not organized exclusively for religious training purposes. Because clearly they were not. They were secular education and other benefits that derive from the program, right? Yes, but the phrase in the statute is not organized exclusively for religious training purposes. Its phrase is organized exclusively for religious purposes. In fact, IRS recognizes that these institutions are organized exclusively for religious purposes by exempting them from filing an annual report form 990. The only organizations, the only charitable organizations, well, you have to file a form 990 with IRS, an annual report, which is then a publicly available document, unless either you receive less than $25,000 in contributions, which doesn't apply here, or if you're a religious organization. These two entities were, and we didn't get this through discovery because IRS didn't produce it in discovery. We eventually got it through the Freedom of Information Act. Too late to put it in the record of trial, but in time to get it before the district judge before he wrote his opinion, excuse me, the tax court judge before he wrote his opinion. IRS has recognized that each of these organizations is a religious organization by exempting it from the requirement of filing form 990. So IRS recognized that. Number two, the fact is the only reason they exist is for a religious purpose. Yes, they provide secular education. The state of California says if you want to have a school, you've got to have secular education. So yes, they provide a secular education too, but that does not take away from the fact that they're organized for religious purposes. They're organized, they provide a secular education, not only because the state of California says if you want to be a school, you have to do that, but also because the parents, the Orthodox Jewish parents who send their children to these schools also need to have their children in an Orthodox Jewish environment for the secular studies. They want boys and girls to be educated separately. They don't want them to be together. And that's not just a matter of want, that is a matter of religious practice. They want certain dress codes in terms of the way the children are required to be dressed. They want certain behavior requirements. And when I say they want, again, as a matter of Jewish religious practice, they want all this. They need to have all this in a school in order for them to be able to comply with Jewish law. And these schools exist for the purpose of serving the religious needs and the religious requirements of the Orthodox Jewish community. That is the reason the schools exist, for religious purposes. One observation and one question. My observation is if you're taking your argument too far, because based on what you're saying, I would say, well, why aren't you arguing that the entire thing should be deductible if it's permeated with a religious purpose? But I know you can say that this part is exclusive, so I understand that. But the other question I have is how do you know, I mean, do we know that the Scientologists are, in fact, similarly situated? Do we know that the IRS treats them as a religious group? Do we know if they have this kind of dual educational system? Do they have non-secular purposes? Well, I guess that's my question. If one looks at the Scientologists' courses, and again, the chart is in the record, you will find that there are courses on such things as personal improvement, getting a job, and things like that, that might be considered by other people to be purely secular matters. The Church of Scientology considers these to be part of their church's mission in terms of improving their members' lives, and IRS allows the payments for those courses to be deducted as charitable contributions. They have K-12 education. I was going to say we also have, and again, this is not in the record because we were not allowed to put anything about Scientology in the record. But there are what are called the Delphi schools, and it's referenced in our reply brief. I even gave a website reference where the court can see. These are schools run by the Church of Scientology. We believe, and we don't have proof because we weren't allowed to get it, but we believe that in these schools that there are auditing and training for the K-12 type schools. We believe that there's auditing and training in these schools, and we believe that payments for the auditing and training in these schools is accepted by IRS as deductible for as charitable contributions. Are you looking for a remand for discovery on this? It seems as though our prior decision said to the IRS they needed to disclose this agreement. That's what I thought too. That was quite a while ago, and they haven't disclosed it or confirmed that what's in the Wall Street Journal is the actual agreement. That's right, and they refused, and the tax court judge upheld their objections without opinion. He never explained why they did not have to disclose the agreement. He did not explain why he quashed our subpoenas to the Church of Scientology. So my preference would be to have this court rule that in light of the fact that it's established that they are discriminating, therefore the scholars are entitled to relief. However, at a minimum I would say there should be a remand to establish what is the practice of IRS vis-à-vis the Church of Scientology. Do they claim any privilege? No privilege. They claim that the agreement with the Church of Scientology is what they call a closing agreement for litigation, and therefore perhaps they should address it. But they claim there was a closing agreement for litigation which is statutory. If we were not to go down this road of discriminatory treatment and just follow Hernandez straight, is there anyone who is standing to actually sue the IRS for giving the Scientologists this special treatment? As I understand the law, it is not possible for one taxpayer to challenge the way another taxpayer is treated in that way. And in fact, a lawsuit was filed in district court in California which was dismissed for challenging this particular arrangement between IRS and the Church of Scientology. The case was Henson v. Commissioner, and it was dismissed for lack of standing, and that dismissal was affirmed by this court without opinion and just summarily affirmed without opinion. So as I understand, there is no way to do what I guess what Judge Silverman kind of suggested in his concurrence in the previous case. All right. Thank you. Thank you. Thank you. Good morning. May it please the Court, my name is Ellen Del Sol and I represent the Commissioner of Internal Revenue. It's been a fundamental premise of the law governing charitable contributions since the statute was enacted in 1917 that for there to be a deductible charitable contribution, there has to be a contribution or gift. And in this case – I'm missing a few words. Slow down and louder. Since the tax code was enacted and the charitable provision was enacted in 1917, it's been well established, it's been repeated in legislative history that for there to be a deduction for a charitable contribution, there has to be a gift or a contribution for which there's no quid pro quo expected in return. In other words, the taxpayer has to be intending to give something and get nothing in return for him to be able to deduct something as a charitable contribution. And based on that premise – But you're allowing the Scientologists to get education and also to deduct it. Well, Your Honor, I think – So isn't that just directly contrary to your, you know, almost 100 years' worth of supreme law in this country that you're citing to us? Well, Your Honor, first of all, just as a preliminary matter, I'd like to clarify that the IRS has continued to be of the view that Section 6103, which protects the privacy of taxpayers, prevents disclosing, even to me, the contents of any settlement. So what we have – well, my knowledge is limited to what's in the record, which is this Wall Street Journal publication, which I can't verify the correctness of. But the whole agreement – quashing a subpoena of the entire agreement isn't necessary to protect the privacy of the Scientologists. Certainly there are parts of it that could be disclosed. Well, Your Honor, not knowing exactly what went into this agreement or what its actual contents are, it's really hard for me to answer that question. But I can say that 6103 imposes on IRS employees and Justice Department employees very broad penalties for disclosing anything that is prohibited by that section. And the only exceptions would be that the taxpayer were in a transactional relationship with the Church of Scientology, which is not the case here. And I think for that reason, the IRS has very good reasons for not closing it. So to be able to get access to this, you'd have to become a member of the Scientology and ask for it? I mean, how do the members of the Scientology – how do the Scientologists' members know that they're entitled to deduct? I would assume that the Church tells them. I don't know the answer to that question with any direct knowledge, but that would be my guess. Well, they sought to subpoena records from the Church about that, and those were quashed by the tax court. Well, I think that's getting into the private taxpayer business of another taxpayer. And I think what's really important to recognize here, getting back to the substance of your question, is whether there's some sort of special law for the Scientologists, and that's not what happened here. I mean, based on what information is in the record in the Wall Street Journal publication, it appears that what happened is a large settlement with the Church of Scientology itself, a very different situation than what we have of one taxpayer here. The Church entered into a large settlement. According to what's in the Wall Street Journal publication, the Church paid $12.5 million to the IRS for a global settlement of a whole lot of issues governing the Church and its members with respect to which litigation has been going on for years. And I think at the time that this came up, the IRS had just won the Hernandez case, which made clear that these sort of payments are payments that, you know, payments for services that are even intangible religious benefits, are services that are for which are quid pro quo in exchange for a payment and that therefore wouldn't be deductible. And I assume that the only reason, you know, and I'm guessing because I don't know, and I'm reiterating that I don't know, but the only reason that you would have put something like that into an agreement was because it was a part of a larger settlement with a group of taxpayers and because each taxpayer has, you know, each member of the Church has a separate cause of action and litigation was continuing and it was a way of resolving litigation. And it's not a permanent, according to the Wall Street Journal, copy the closing agreement, it's not a permanent you're entitled to this deduction forever, it's for a very limited number of years. And as I said, it's part of a much larger global settlement. A limited number of years encompasses the same time period that the scholars are objecting to. Well, I think, but again, this is just what I'm trying to emphasize here, is it's a settlement with respect to a particular group of taxpayers that are part of this whole global settlement that pertain, that was limited to resolving their issues and involved a payment on their part. Didn't Judge Reinhart explain pretty clearly why that closing agreement is discoverable in the first decision on this case? Well, the court there ruled against the scholars based on failure to have adequate substantiation to support their claims. And I think the same reasoning applies here, I think they still, even after having a remand, they haven't substantiated that they paid more than the fair market value of what they received and they've not established that they intended to make a charitable contribution. So I think that even setting that agreement aside for much the same reasons as was the case in Sclar 1, that they still can't prevail. What about that order in the case of Judge Reinhart? I was on the panel. Well, Your Honor, I read it, and forgive me if I'm not construing it the same way you did when you put it together with Judge Reinhart. But my understanding of that commentary was that that was dicta and that the court was ruling on the issue of whether the scholars were entitled to the payment based on their failure to establish that they had paid more than the fair market value of what they got, which if you look at page 4 of the excerpts of record is still the case here, because they didn't pay more than you would even for another Jewish school in the area. And there were many, most of the secular schools charged even more tuition than what taxpayers paid. So they weren't paying for more than what they got. I mean, if the premise is, you know, if what taxpayers are asking for here is, as they said earlier in the argument. Well, you know, as they say in Helena, Montana, what you're telling me just doesn't pass the spell test. That's right. The deduction doesn't pass the spell test, and you don't even have to get to whether the Scientologists are getting and you don't have to, just like in FAR 1, you don't have to reach the issue of whether the Scientologists' agreement should be disclosed. And I guess I wouldn't have read that as an order to the IRS, because ultimately Judge Reinhart decided the case on the different ground of the taxpayers hadn't established that more than, that they paid more than the fair market value for the taxpayers' education. And that's exactly the same situation we're in, even after discovery on that issue and looking at what other schools in the area cost. Did you have a question? I have a couple of questions. One, I want to go back to the issue of, and in order to get to the right response, I guess we need to know what the question is, but SCLAR 1 seemed to suggest, perhaps unfortunately so, that the issue was whether, what was the comparison between the cost of the secular portion of an education versus tuition for a secular program, and perhaps invited this bifurcation of activity within the school. Is the proper question whether or not the SCLARs received an appropriate education at a school where the tuition was low, at fair market value, therefore eliminating any possibility that it constitutes a quote-unquote dual payment? Well, I think Hernandez makes clear that the quid pro quo they received includes both the religious component and the secular component. So I think the real question is whether the totality of what they received is something they paid more than fair market value for. And isn't that the question that should be asked under Hernandez? That is correct, Your Honor. But I think what they're urging the court is to ask whether they paid more than what secular education would have cost. And that's the way the counsel for the appellee framed the question earlier, is whether they can, what they paid exceeded the fair market value of a secular education. And I think when you look at the cost of private education in Los Angeles, and there's a summary of it, as I mentioned, at page four of our supplemental excerpts of record, those costs, whether you look at just Jewish day school costs that include both the religious and secular component or secular education, they run about in the low to middle end in terms of what they paid. And so it's really not a case where they've established that they pay more than the fair market value. And in fact, in their briefs at several, on page 34 and 35 of their brief and in their testimony in the record, the scholars indicated they didn't intend to make a gift. And their argument in their briefs is really one of they didn't intend to make a gift, but to the extent that they were paying for religious benefits, those benefits are benefits that can be deducted. And that's just not the law under Hernandez. And the 1993 amendments didn't change that. Congress, in the legislative history, is very clear that it's just providing substantiation provisions. It added section 6115 that makes charities provide valuation of things that are received that are so-called dual payment gifts. And it added section 170F8, which clarifies when taxpayers have to get substantiations from a charity to show what portion of their gift is an actual gift and what portion is something for which they were seeing a quid pro quo. And those provisions are aimed at being able to better administrate the tax laws and being able to get documentation to establish that taxpayers are really entitled to the deductions they claim. They don't in any way change the substantive requirements of what's deductible. And I find it very hard to believe that Congress would have intended to totally change the law to suddenly allow a deduction for intangible religious benefits and overrule Hernandez without ever in the legislative history mentioning Hernandez or discussing its intent to do so. And I think when you read the face of the statute and the legislative history, it's very hard to read such a thing into what Congress drafted. At page 66 of your brief, though, you assert that the IRS's closing or settlement agreement can hardly form the basis of the constitutional claim of disparate treatment. And I guess I want to ask the question, why not? Well, I think, first of all, based on the information that I have, it doesn't appear to me that the taxpayers here are similarly situated to the Church of Scientology. As I mentioned before, it was a large global settlement. How do we know that? Well, certainly in all the litigation that leads up to... Yeah, you tell us. You don't know anything either. But you read the Wall Street Journal. Well, I'm limited to what I read in the Wall Street Journal and what's already been litigated. And looking at what's been litigated and what led up to this settlement, generally the Scientologist payments, and as this Court recognized in Sclar 1, generally the Scientologist payments were payments that adults paid to get these special audit and training classes that were designed to move them towards spiritual enlightenment, basically, is the gist of that. Whereas here we're dealing with education... But Fender-Hernandez shouldn't be deducted. Pardon me? It shouldn't be deducted. And that's a benefit. It's not deductible, right. But it's different. But the IRS let them deduct it, right? Well, the issue is whether these taxpayers are in the same situation as the taxpayers in that settlement, as I understand the question. And we have no idea. They could enter into a settlement. Well, here we're dealing with payments for children for education that's compulsory by the state. And so it is different. But, I mean, I think it's different from what cases have been litigated, like Hernandez, involving the Scientologist. And, again, it's not... We're dealing with one taxpayer claiming religious school deductions for their children, as opposed to, as with settlement Scientology, a larger global settlement with a whole church, at least so the Wall Street Journal indicates. But I'd get back to the point that even if there were some establishment clauses or administrative consistency problem with this sort of situation, I think it's not fixed here by giving one more taxpayer and one more religion. Well, that's your best argument, is that two wrongs don't make a right. But that's hardly comforting, given the length of time that this issue has been front and center, the clarity with which Judge Reinhart wrote his opinion, and the mess we're still in, in terms of what we don't know. That's a frustration that is hard to get beyond. Well, I recognize it's frustrating, but I think Congress had its reasons for enacting 6103, and that reason was to protect taxpayer privacy, and it spelled out very specific exceptions. And I think the requirement that that taxpayer has to be in a transfectional relationship with another taxpayer who has litigation as a precursor to opening up that door to discovery. Any judge can protect the privacy of the Scientologist's agreement by taking the document under seal, by only disclosing it to the parties. And there's lots of ways to protect and handle that so that the privacy of the individual Scientologist isn't broached. Well, I think, as I mentioned before, though, that would be a very significant step that would require an order to the IRS to come forward. I'm thinking maybe that's what we're going to have to do. Well, as I mentioned before, though, the tax court found it wasn't relevant, and I think they were right, because... What if we disagree? Because we don't know. How do we make an analysis? We can't even make an informed decision. Well, here this taxpayer has even shown that the payments that they made exceeded the fair market value of what they got. And I think even if they're entitled to deduct anything that exceeds the value of their secular education, they haven't shown that they paid more than what they would have paid for secular education elsewhere. And they haven't shown that they intended to make a donative gift. I mean, I think that's an important part of what the Supreme Court's saying in Hernandez and American Bar Endowment, that there has to be a charitable intent. And they don't express that they intended here. Page 34 and 35 of their brief, they basically just say, you know, yes, we understand we got a quid pro quo, but religious quid pro quos don't count. And their theory is that Congress has somehow changed that with the 1993 amendments, or that they should be entitled to have it not count, because the Scientologists did under a settlement. And I think that's just not right under American Bar Endowment. You've got to look at whether they paid more than the fair market value of what they received and whether they intended a donation. And if they don't meet those requirements, it's not relevant whether someone else who did meet those requirements might have been able to get a deduction or not. And I would reiterate that everything that is known indicates that this is a very different situation of one taxpayer at a school. One taxpayer claiming deductions for their child. And if it's expanded, it would, you know, it would mean that, you know, everybody, you know, if the answer is that everybody gets the same thing that the IRS gives one person in a settlement, it would mean every time there's a settlement with a person of a particular religious group, then everybody else who can find out about it from every other religious group is going to come in and want the same thing. And that would really tie the IRS's hands in terms of settlement. I mean, because the same principles could extend to equal protection arguments. You know, my minority group got the, somebody in the minority group got the settlement. I ought to get it, too, because I'm a different minority group. That's the sort of thing that would flow from the idea that the IRS can't settle and keep that confidential and that a settlement. It is a terrible parade of horribles that would follow, Your Honor. You know, I've been listening to these arguments for a long time, and I'm still not trembling. Well, I would just add one more issue for, you know, counseling against the idea of opening up once one taxpayer gets a settlement and everybody else gets it. In this particular context here, to say that you have to parse out religious education from secular education, I think that creates its own establishment clause. Quagmire, I think this court recognized that in SCLAR 1, and the Supreme Court did in Hernandez. And here, in particular, the record makes clear that the classes are intertwined, that, you know, the mission statements of the schools indicate that even though there's the time separation, that there is intertwining of concepts. So reading and writing might be something that spills over into today's studies. Well, what would be the problem of disclosing that agreement to the district court in Canberra? Well, it was in the tax court, Your Honor. But had the tax court so ordered, I mean, I think had we had a direct order from the court, I can't, you know, obviously that might have been something that we would have raised additional arguments about that I haven't even thought of yet. But if we ultimately were ordered by a court to do so, I, you know, I don't, I think, you know, generally the IRS complies with the court's orders, I think. But what we have from Judge Reinhart was simply an opinion in dicta that he wasn't sure that Section 6103 would be abated. And since it's not relevant, I think the tax court reached the correct result on relevance grounds, because taxpayers didn't make the showing they needed to to get past the requirements under the American Bar Endowment case. And this court's opinion is Scalar I of substantiating their deduction in any event. And I'd just further add that under the new substantiation requirements, they still didn't meet the requirements for their claim deductions, because after 1993, they had to have actually gotten within the tax year contemporaneously before their return was due. A substantiation, and they didn't actually get substantiation of their deductions until 1997 when Mr. Scalar asked for a letter from the schools with this breakdown with the percentage of the days that's in the record. And so they still haven't met substantiation requirements, and there's plenty of reason to hold that they're not entitled to deduction without even getting into the Scientology. So your view is that, or the view of the IRS, is that it can unconstitutionally violate the Constitution by establishing religion, by treating one religion more favorably than other religions in terms of what it allows as deductions, and there can never be any judicial review of that. Your Honor, that is not at all what I said. It is the IRS's view that it can settle, it can resolve an issue by giving, conceding something to one person, one group, in exchange for a payment and resolution of litigation. It is not the general, it's not a general policy of favoring one group, and I don't think that the IRS is acting unconstitutionally. I know you're not going to say that that's the agreement, but it's written right into it. Well, to the extent that we're looking at what the Wall Street Journal agreement says, there was a payment made, though, and litigation was conceded, so it's not as simple as... You're saying now that it's okay as long as the IRS gets some money. Well, I think the idea is, for the IRS generally and with each taxpayer, is to try to enforce the tax laws and get the best results. But there are situations when, in litigation, it makes sense, from the point of view of using up the resources of the courts, and from the point of view of all the parties' legal expenses, to reach a settlement. And when a settlement is reached that, for some reason, gives somebody who happens to be a member of a particular religious group or particular minority, and they get that settlement, that doesn't violate the establishment clause to settle. This is different, though. I mean, no, it does. I mean, this does intrude into the establishment clause when the government is favoring. That's the whole point. I mean, even Justice Scalia and some of the justices have written that the whole point is government neutrality toward religion, according to some people, and that's exactly what the IRS is not doing here. Well, but that problem is not solved by giving the same benefit to one more taxpayer. The problem would be solved by a suit challenging the Church of Scientology's actions. And I think that's what Judge Silverman suggested in a concurring opinion in Scalar I, is that that would be the appropriate mechanism for challenging this, and bringing some sort of establishment clause suit to challenge the Church of Scientology settlement, and stopping that one inappropriate agreement, if that is what it can be categorized as. But why is it your position that nobody has standing to do that? Well, you know, in the one case, the Henson case that the taxpayers cite, the argument that he made for standing was that he had been injured by the Church of Scientology's use of the money that it got out of the settlement. And the courts wrote a very brief unpublished opinion, but my understanding of that, from reading the briefs, is that the reason he didn't have standing is because the Scientologists were not even made a party to the case, and his allegations were all based on actions of the Scientologists, as opposed to actions of the taxpayers. And I will concede that I think it is, in this situation where it's the executive branch applying a law rather than an act of Congress, it does make the jurisprudence on standing is more difficult. But I think maybe a taxpayer who says they had to pay a different amount might have such... You know, you're over your time, but it just sounds almost like we're having a congressional hearing. You can't get any answers. All right, 30 questions. Thank you very much for your time. If I may, Your Honor, with respect to the parade of horrors, it seems to me that there would be nothing, no reason the court to fear. I mean, if IRS were saying that white people were entitled to a certain deduction and black people were not, I mean, why would it be such a parade of horrors for courts to come in and say the government is not entitled to a certain deduction? I mean, the government may not act that way. But same way here, the government may not act with this type of discrimination on the basis of religion. Aren't you worried about the kind of government intrusion that may result from you getting what you want in this case, and that is some sort of an audit of every institution so that the IRS can satisfy itself that, yes, this is really religious education? And so, you know, I used to skip chapel sometimes in college to go take batting practice, because I was convinced the Lord really wanted me to be a better hitter. I mean, would I lose the deduction by skipping chapel and going to batting practice instead? I don't think we have to get into it. It depends on how much you improve. It depends on whether you're religious or not. The whole history of their litigation with the Church of Scientology was over the issue of whether the practices and the activities of the Church of Scientology were religious or not. IRS today has to decide whether the practices of Wiccans, are they religious or not, for purposes of Section 501C3 and Section 170 of the Internal Revenue Code. But we're to the point now where we're saying 55 versus 45 percent. I mean, you really want the IRS to try to validate that for every Catholic institution, for every Jewish institution, for every Protestant institution? Whatever is right. Every Muslim institution. Wherever the payments are in excess. This Court set the standard in the prior case, and it's very clear. They said that the sclars, they were ruled against, this Court ruled against the sclars for having not shown that any dual tuition payments they made may have exceeded the market value of the secular education their children received. That was the standard set by this Court. We established, and there was no contrary evidence whatsoever. Dr. Lewis Solomon, a distinguished former dean of the Graduate School of Education at UCLA, a Ph.D. economist at the University of Chicago, Dr. Solomon made a careful study and came to the conclusion of what was the fair market value of the secular education that the sclar children received in 1995. And the payments they made for that education exceeded that value by almost $20,000, far more than the $15,000 that they had claimed as a deduction. It was not a particularly complex analysis, I might also add. It did not require a lot of intrusion on the schools. Yes, it took someone who knew what it was doing, or someone who knew about education, to go in. But it did not require any more intrusion upon the religious institutions than a basic IRS determination as to whether something is a religious organization. In order to determine whether a 501c3 organization is exempt from filing Form 990 as a religious organization requires an IRS assessment of the activities of that organization, are they religious or not. But are you saying that, what is your reason for saying that the sclars don't have to have an intent to make a charitable contribution? Because for over 90 years now, with respect to payments in exchange for intangible religious benefits, whether you want to say that it's inherent in paying for an intangible religious benefit, that there's a donation, a donate of intent, or that we just don't require that, the fact is that it's not. The fact of the matter is, when I pay $100, or if I paid $100 to go to a synagogue on a holiday, if I pay $100 to have a dedicated mass said, I don't have to show that I was intending to make a donation. The fact is, because all I'm receiving in return, because the quote for my quid is an intangible religious benefit, I am therefore allowed to take the charitable contribution. That's been IRS procedure.
judges: Pregerson, Wardlaw, Leighton